No. 13-1479

—————————

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

—————————

**G.H. DANIELS III & ASSOCIATES, INC.,** *et al.,*

**Plaintiffs-Appellants**

**v.**

**THOMAS E. PEREZ, Secretary of Labor,** *et al.,*

**Defendants-Appellees**

—————————

**On Appeal from the United States District Court
for the District of Colorado
(D.C. Civil No. 12- 1943)
District Judge: Hon. Christine M. Arguello**

—————————

## AMICUS RESPONSE TO PETITION FOR PANEL REHEARING
## SUPPORTING PLAINTIFFS AND AFFIRMANCE

—————————

R. Wayne Pierce
THE PIERCE LAW FIRM, LLC
133 Defense Highway, Suite 201
Annapolis, MD 21401
Phone:  (410) 573-9955
wpierce@adventurelaw.com

November 2, 2015

## CORPORATE DISCLOSURE STATEMENT

Amicus, Outdoor Amusement Business Association, Inc., hereby discloses that there are no:

- Parent corporations.
- Publicly-held companies holding 10% or more of the party's stock.
- Publicly-held corporations with a financial interest in the outcome of the proceeding that are aligned with any amicus.

The only other persons financially interested in the outcome of this matter are the Association's members.

# TABLE OF CONTENTS

                                                                    Page

Table of Authorities                                                 iv

Interests of Amicus                                                   1

Issue Presented                                                       1

Argument                                                             2

I.  The Language of § 1103 (a) (6) Shows the Congress Did Not Authorize
DHS to Subdelegate Its Rulemaking and Adjudicative Functions         2

II.  The History of § 1103 (a) (6) Shows That Congress Did Not Authorize
DHS to Subdelegate Its Rulemaking and Adjudicative Functions         7

III.  The Structure of the Immigration Statute Shows That Congress Did
Not authorize DHS To Subdelegate Its Rulemaking and Adjudicative     8
Functions

IV.  DHS Cannot Use Potential Ambiguity As Congressional
Authorization to Subdelegate Its Rulemaking and Adjudicative        10
Functions

Conclusion                                                          14

Appendix                                                            16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bayou Lawn & Landscape Servs. v. Solis*, 2012 U.S. Dist. Lexis 69297, at \*12-13 & n. 10 (N.D. Fla. Apr. 26, 2012), *aff'd*, 713 F.3d 1080 (11th Cir. 2013).    6

*Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204 (1988)    13

*Butterbaugh v. Department of Justice*, 336 F.3d 1332 (Fed. Cir. 2003)    13

*G.H. Daniels & Assocs., Inc. v. Solis*, 2015 U.S. App. Lexis 15689 (10th Cir. Sept. 3, 2015) (unpublished)    14

*FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009)    12

*Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008)    12

*Gonzales v. Oregon*, 546 U.S. 243, 260 (2006)    13

*Louisiana Forestry Ass'n Inc. v. Secretary of Labor*, 745 F.3d 653, 671 (3d Cir. 2014)    13

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)    11

*NAACP v. Donovan*, 737 F.2d 67, 69 (D.C. Cir. 1984)    7

*Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).    11

*United States v. Touby*, 909 F.2d 759 (3d Cir. 1990), *aff'd*, 500 U.S. 160 (1991)    11

*United States v. Nixon*, 418 U.S. 683 (1974)    10

*United States Telecom Ass'n v. FCC*, 359 F.3d 554 (D.C. Cir. 2004)    12

## STATUTES

5 U.S.C. § 553    12

5 U.S.C. § 558                                           13

8 U.S.C. § 1101                                       3, 8, 9

8 U.S.C. § 1103                                           2
                                                    *passim*
8 U.S.C. § 1104                                           5

8 U.S.C. § 1153                                           9

8 U.S.C. §§ 1154                                         9

8 U.S.C. § 1182                                         8, 9

8 U.S.C. § 1184                                       2, 3, 9

8 U.S.C. § 1188                                       9, 10

8 U.S.C. § 1288                                           8

## REGULATIONS

8 C.F.R. § 2.1                                         3, 13

8 C.F.R. § 214.2 (h)                                     10

20 C.F.R. § 655.6                                        10

20 C.F.R. § 656                                           9

29 Fed. Reg. 15252, 15253 (Nov. 13, 1964)               7

31 Fed. Reg. 6611, 6611 (May 4, 1966)                   7

55 Fed. Reg. 2606, 2616, 2617 (Jan. 26, 1990)           7

67 Fed.Reg. 48354 (July 24, 2002)                       7

68 Fed.Reg. 10922, 10922 (Mar. 6, 2003)               3, 5

73 Fed. Reg. 78104 (Dec. 19, 2008)                      7

78 Fed. Reg. 24047, 24050, 24061 (Apr. 24, 2013)        7

80 Fed. Reg. 24042, 24108 (Apr. 29, 2015)          7, 11, 12

## LEGISLATIVE HISTORY

98 Cong. Rec. S-8253, S-8253-54, S-8255 (June 27, 1952)     8

## OTHER AUTHORITIES

*Attorney General's Manual on the Administrative Procedure Act* 88 (1947)     13

*DHS-DOL Interagency Agreement* § 1.0, Amicus App. 16 (Jan. 16, 2009)     7

## Interests of Amicus

We present this brief as friends of the court in the old-fashioned sense, and we offer our support to the plaintiffs' efforts to uphold the panel's decision of this vital case.  The Outdoor Amusement Business Association, Inc., is a national trade association formed in 1965 to advance the interests of the mobile amusement industry.  A large segment of our membership participates in the H-2B program to meet their labor needs.

We are intensely interested in and affected by the development of the law in this case.  We believe our assistance will be directly relevant and helpful, and will focus on "new" information not otherwise supplied.  We will offer a broader, more abstract analysis so that its background and context are apparent.  We have insights not likely to be produced otherwise.  We will identify the practical impact and unintended ramifications of the issue.

We seek to file this brief on the authority of our executive committee. This brief and any related funding is solely the effort of the Association, its members, and its counsel.  No other counsel, any party, or any third party authored any portion of this brief or contributed funding.

## Issue Presented

The sole issue submitted for panel rehearing is whether DHS is authorized by 8 U.S.C. §1103(a)(6) to subdelegate the rule-making and adjudicative "functions"[1] of the H-2B program to DOL.

**Argument**

## I.  THE LANGUAGE OF §1103(a)(6) CLEARLY SHOWS THAT CONGRESS DID NOT AUTHORIZE DHS TO SUBDELEGATE ITS RULE-MAKING AND ADJUDICATIVE FUNCTIONS

When properly construed, it is readily apparent that §1103(a)(6) is narrowly drafted and does not authorize an inter-departmental scrum.  The subsection provides:

> [The Secretary of Homeland Security] is authorized to confer or impose upon any *employee* of the United States, with the consent of the head of the Department … under whose jurisdiction the employee is serving, any of the *powers, privileges, or duties* conferred or imposed *by this Act or regulations issued thereunder upon officers or employees of the Service*.

8 U.S.C. §1103(a)(6) (emphasis added).  There are 3 core components to this subsection, none of which support DHS's claimed subdelegation theory.

**1.  Scope of §1103(a)(6).**  The first element of this subsection is the conditional phrase that dramatically limits its scope: The subsection is limited

---

[1] At one point, DHS implies that the panel opinion is dubious because it fails to distinguish between subdelegating legislative rulemaking authority under 8 U.S.C. §§1103(a)(3) and 1184(a), from adjudicating fact-based determinations under 8 U.S.C. §1184(c)(1).  *Petition for Rehearing* 4-5.  This is a difference without a distinction.  In either instance, DOL was performing the functions of either formulating or applying purported rule-making or decisionmaking authority without legal basis.

to those narrow circumstances in which the immigration statute or its implementing regulations have "conferred or imposed" a particular status specifically on the "officers or employees of the Service," not the Secretary of Homeland Security.  In the latter instance, both the H-2B rule-making and adjudicative functions are statutorily vested in the Secretary of Homeland Security, not any particular "officers or employees of the Service."  8 U.S.C. §1184(a), (c)(1).  Although the Government correctly points out that the "Service" is the Immigration and Naturalization Service, *Petition for Rehearing* 10 n.4, *see* 8 U.S.C. §1101(a)(34), the Government fatally failed to establish that any particular status ever was or currently is vested in the successor to any "officers or employees of the Service."  As such, the Government has not shown that it can ever satisfy the scope of this particular subsection.

The Government's unwillingness to establish that it has satisfied the scope of the subsection is readily apparent from the implementing regulation that it cites in passing, but utterly fails to analyze.  This is because the Secretary of Homeland Security has arrogated to himself "[a]ll authorities and functions" of the Department.  8 C.F.R. §2.1.  *See also* 68 Fed.Reg. 10922, 10922 (Mar. 6, 2003) (§2.1 "vests all authorities and functions of DHS to administer and enforce the immigration laws" in the Secretary).  Once again,

the Government has failed to show that any of these authorities or functions have been or are delegated to any INS successor employees or officers.

Finally, §1103(a)(6) requires that the relevant status have been conferred or imposed by "regulations issued" under the immigration statute.  However, the Department undertakes intra-departmental subdelegation by a host of sub-regulatory devices, such as "directive[s], memorand[a], or other means as deemed appropriate by the Secretary …." §2.1.  The Government has failed to show that any initial intra-departmental subdelegation was undertaken by regulation.  It is little wonder that the Government simply ignored this limiting scope.

**2.  "Powers, privileges, or duties."**  The Government also chose to ignore whether the requisite status was at issue.  On its face, the statute is expressly limited to "powers, privileges, or duties."  Both the rule-making and adjudicative functions are statutorily extended to the Secretary, thus making them presumptively improper for extending them to low-level officers or employees of the Service within the scope of the subsection.

Completely missing in the Government's analysis is the critical distinction between "powers, privileges, or duties" and "functions."  It is the Department's "functions" that are vested in the Secretary under §2.1 and 8 U.S.C. §1103(g)(1), whereas "powers, privileges, or duties" inhere in low-level

officers or employees.  *See also* 68 Fed.Reg. at 10922 (DHS Reorganization Plan (Nov. 25, 2002), carefully transferred the "functions" of the INS and DoJ, and "all authorities with respect to those functions," to DHS.).  This critical distinction is seen in several other passages.  Thus, the "administration and enforcement" of the immigration statute is vested in the Secretary "except in so far as this Act … relate[s] to the powers, **functions**, and duties conferred upon" the President, Attorney General, Secretary of State, officers of the Department of State, or diplomatic or consular officers.  8 U.S.C. §1103(a)(1) (emphasis added).  In a purported "identical provision," *Petition for Rehearing*  9, the Secretary of State may delegate his "powers, **functions**, or duties" to other federal employees,  8 U.S.C. §1104(a) (emphasis added), but this is not the expansive provision available to the Secretary.

The Government's failure to distinguish these "functions" from "powers, privileges, or duties" can only have been intentional.  Without even acknowledging the restriction, the Government repeatedly represented that DHS was authorized by §1103(a)(6) to

- delegate its "decisionmaking function" to DOL, *Petition for Rehearing*  2,

- "subdelegate any of its functions," *id.* at 8,

- subdelegate its "powers, functions, or duties," *id.* at 14, and

- delegate "any [of] its powers, functions, or duties," *id.*

Note that each of these passages concedes that rulemaking and adjudicative authority are, indeed, "functions," a status outside of the scope of §1103(a)(6).

**3.  Transfers under §1103(a)(6) may only be conferred on low-level employees**.  The third component of §1103(a)(6) is that any transfer of low-level "powers, privileges, or duties" may only be conferred on correspondingly low-level "employees."  This follows from the presumption that the meaning of "employee" does not inexplicably change in the very same sentence.  Thus, any transfer goes from low-level DHS "employees" to equally low-level "employees" in other agencies, but not to officers, and certainly not to heads of departments.  The only role for department heads (such as the Secretary of Labor) is to approve the transfer, not to exercise the transferred powers, contrary to the Government's contentions.

There is an obvious shortcoming in the Government's construction of §1103(a)(6): It contains no limiting principle.  The only conclusion to be drawn from the Government's position is that **anyone** working for the federal government can be authorized to issue H-2B regulations or adjudicate H-2B applications.  This is absurd, just as other courts have indicated.  *Bayou Lawn & Landscape Servs. v. Solis*, 2012 U.S. Dist. Lexis 69297, at *12-13 & n. 10 (N.D. Fla. Apr. 26, 2012), *aff'd*, 713 F.3d 1080 (11th Cir. 2013).

## II.  THE HISTORY OF §1103(a)(6) SHOWS THAT CONGRESS DID NOT AUTHORIZE DHS TO SUBDELEGATE ITS RULE-MAKING AND ADJUDICATIVE FUNCTIONS

Even after litigating this case (and others) for years and conceding that the plaintiffs "focused" on DHS's unlawful delegation of legislative rule-making authority, *Petition for Rehearing* 5, the Government has not cited a single instance in more than 60 years of administering dozens and dozens of visas in which

- DHS itself has represented that §1103(a)(6) justified an inter-agency transfer of rule-making or adjudicative functions, or that it even acknowledged the possibility. *See, e.g.*, 67 Fed.Reg. 48354 (July 24, 2002) (Attorney General's power to authorize state or local police to exercise federal immigration enforcement authority during a mass influx of aliens); *DHS-DOL Interagency Agreement* § 1.0, Amicus App. 16 (Jan. 16, 2009) (DHS's transfer of H-2B enforcement power justified solely on the express congressional authorization under 8 U.S.C. §1184(c)(14)). None of DHS's regulations calling for a DOL role within the H-2B program was ever based upon §1103(a)(6). *See, e.g.*, 29 Fed. Reg. 15252, 15253 (Nov. 13, 1964); 31 Fed. Reg. 6611, 6611 (May 4, 1966); 55 Fed. Reg. 2606, 2626 (Jan. 26, 1990); 73 Fed. Reg. 78104, 78108, 78112 (Dec. 19, 2008); 78 Fed. Reg. 24047, 24050, 24061 (Apr. 24, 2013); 80 Fed. Reg. 24042, 24108 (Apr. 29, 2015).

- a single court has determined that §1103(a)(6) sustained an inter-agency transfer of rule-making or adjudicative functions.  Even after some older cases addressing the separate path taken by H-2 agricultural workers and holding that INS had subdelegated authority to DOL, none of those cases ever suggested that the subdelegation was justified by §1103(a)(6). *See, e.g., NAACP v. Donovan*, 737 F.2d 67, 69 (D.C. Cir. 1984) (INS "has delegated to DOL the responsibility" to determine unavailability of U.S. workers).

- even a shred of historical evidence supported the Government's inter-agency-subdelegation theory. It is instructive that Sen. Pat McCarran, while leading the floor fight to override President Truman's veto on the original immigration statute, specifically referenced "**all** the departments which would be concerned **in any way** with the **administration** of this measure ...." 98 Cong. Rec. S-8253, S-8253-54 (June 27, 1952). (emphasis added). He did not include DoL as such an agency.

Amicus is not surprised by the absence of any supporting evidence, nor have we been able to find any.

## III.  THE STRUCTURE OF THE IMMIGRATION STATUTE SHOWS THAT CONGRESS DID NOT AUTHORIZE DHS TO SUBDELEGATE ITS RULE-MAKING AND ADJUDICATIVE FUNCTIONS

The structure of the immigration statute demonstrates that Congress prohibited DHS's inter-agency subdelegations. The *expressio-unius* maxim is compelling because of the reticulated immigration statute and the Congressional choices to target specific problems with specific solutions. It is Congress that has repeatedly made clear when DOL is to adjudicate determinations and issue labor attestations, applications, or certifications in certain employment-based visas. 8 U.S.C. §1288(c)(1)(B) (**D** visa, crew members performing longshore work); *id.* §§1101(a)(15)(E)(iii), 1182(t)(1)(A) (**E-3** visa, employment-based workers); *id.* §§1101(a)(15)(H)(i)(b), 1182(n)(1)(A) (**H-1B** visa, specialty occupations); *id.* §§1101(a)(15)(H)(i)(b1), 1182(t)(1)(A) (**H-1B1** visa, specialty occupations from enumerating countries); *id.* §§1101(a)(15)(H)(i)(c), 1182(n)(2)(A)(ii) (**H-1C** visa, registered nurses); *id.*

§§1184(c)(1), 1188(a)(1), 1188(e)(2) (**H-2A** visa, temporary agricultural workers); *id.* §§1153(b)(3)(C), 1154(b), 1182(a)(5)(A)(i) (**PERM** immigrants seeking employment).  For other employment-based visas, Congress has excluded DOL.  *Id.* §1101(a)(15)(J) (**J** visa, cultural exchange); *id.* §1101(a)(15)(Q) (**Q** visa, cultural exchange); *id.* §§1101(a)(15)(R), 1101(a)(27)(C)(ii) (**R** visa, religious professionals).

There are other employment-based visas that Congress has conspicuously grouped with H-2B visas under §1184(c)(1), yet excluded DOL.  *Id.* §1101(a)(15)(L) (**L** visa, intra-company transfers); *id.* §§1101(a)(15)(O), 1184(c)(6)(A)(i) (**O** visa, professionals of exceptional skill); *id.* §§1101(a)(15)(P), 1184(c)(6)(A)(iii) (**P** visa, athletes or performers).  DOL has never issued labor-certification regulations for any of these visas.  20 C.F.R. §656.2(c)(3).  Under the principle of *noscitur a sociis*, Congress has grouped these visas along with H-2B visas because DOL has no role in making determinations beyond simple consultations.

Similarly, when Congress wanted DOL to have rule-making authority for the H-2 visa, it expressly provided for it under the H-2A agricultural program in 1986, and permitted DHS in 2005 to delegate the H-2B enforcement function to DOL; both of these developments were accomplished by statute.  8 U.S.C. §§1184(c)(14), 1188(e)(2).

There are many other indications that Congress has prohibited these inter-agency subdelegations. Congress has extended no appropriations or fee-for-service when DOL "consults" on H-2B applications, but it has dedicated funding to issue H-2A and PERM labor certifications under 8 U.S.C. §1188(g)(3). Further, DHS's actions have converted DOL into a co-determiner with duplicative functions. *Compare* 20 C.F.R. § 655.6 (DOL determines temporary need) *with* 8 C.F.R. § 214.2 (h) (6) (ii) (DHS also determines temporary need). This duplicative regulatory regimen would not have been possible if DHS had truly subdelegated. *United States v. Nixon*, 418 U.S. 683 (1974) (agency may not exercise regulatory power once it has been delegated).

## IV. DHS CANNOT USE POTENTIAL AMBIGUITY AS CONGRESSIONAL AUTHORIZATION TO SUBDELEGATE ITS RULE-MAKING AND ADJUDICATIVE FUNCTIONS

Of course, DHS's position is nothing more than calculated obfuscation and "hiding the ball" to delay the day when it is held accountable. This is the only sensible conclusion from DHS now contending on rehearing that it "could have" subdelegated to DOL. *Petition for Rehearing* 13, 14 ("assuming" that DHS could subdelegate decisionmaking authority to DOL, without contending that it had done so). Arguing over what DHS "could have" done is

- Nothing more than a request for an advisory opinion.

- A complete abdication of its responsibility under the *Chenery* doctrine.  It is up to the agency in the first instance to determine policy, and this is based upon sound separation-of-powers principles.  *Securities & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943).  It is not this Court's responsibility to hypothesize how the Government's position might be sustained, and it would be a violation of separation of powers to do so until DHS has properly adopted a policy.   Judicial review of agency action must be on the record, *Chenery*, 318 U.S. at 87, and upheld on the basis articulated by the agency, *Motor Vehicle Mfrs Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983), but there is no record evidence of what DHS "could have done" because it never raised this claim before.

- A complete failure to pursue public notice and comment.  The decision to subdelegate, especially rule-making authority to an outside entity, is itself a "rule" under 5 U.S.C. § 553 subject to notice and comment.  *United States v. Touby*, 909 F.2d 759, 770 (3d Cir. 1990), *aff'd*, 500 U.S. 160 (1991) ("Unquestionably," the agency "must [subdelegate] explicitly in order for the subdelegate to be empowered to act.").  The public should not have to guess as to the agency's position.  DHS currently contends that DOL's actions are legally justified as "advice," 80 Fed. Reg.  24042, 24042 (Apr. 29, 2015),  a "condition precedent," *id.* at

24045, "jointly issued" with DHS, id. at 24042, "independently" authorized by Congress, *Response Brief* 21-42, and delegated "enforcement powers," 80 Fed. Reg. at 24046. Please don't allow DHS to make this even more confusing by arguing what "could have been."

- Precluded by judicial estoppel. DHS has already contended that there was, in fact, no subdelegation. *Response Brief* 19, 22.

- A violation of the rule that the agency must actually "believe" its policy. *FCC v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1811 (2009) (regulation is valid in part when agency "believes" the regulation is better). No such belief is possible when theorizing what "could have been."

DHS also contends that express congressional authority was not required to transfer rule-making authority to another agency. *Petition for Rehearing* 7 n. 2. Every recent Circuit Court decision has uniformly disagreed, holding that an agency may delegate rule-making authority to a non-subordinate sister agency only if Congress explicitly authorized such interdepartmental transfers. *United States Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004) (agencies "may not subdelegate [decision-making authority] to [non-subordinate] entities – private or sovereign – absent affirmative evidence of authority to do so."); *Fund for Animals v. Kempthorne*, 538 F.3d 124, 132 (2d Cir. 2008) (same);

*Butterbaugh v. Department of Justice*, 336 F.3d 1332, 1342 (Fed. Cir. 2003) (same); *see also Louisiana Forestry Ass'n Inc. v. Secretary of Labor*, 745 F.3d 653, 671 (3d Cir. 2014) (recognizing, but distinguishing, the rule).  There is no evidence of any such congressional authorization for DHS to subdelegate this particular power to this particular agency.  Although DHS does not contend that §1103(a)(6) is ambiguous, its interpretation under 8 C.F.R. § 2.1 is not entitled to any deference because

- § 2.1 does not even "parrot" the statute, which would have entitled it to no deference, *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006) (no *Chevron* deference for a regulation that "parrot[s] or"merely … paraphrase[s] the statutory language"), but merely incorporates it in abbreviated fashion.

- It is not an explicit grant of subdelegation powers as required by 5 U.S.C. §558(b).  The purpose of this provision is "to assure that agencies will not appropriate to themselves powers Congress has not intended them to exercise." *Attorney General's Manual on the Administrative Procedure Act* 88 (1947).  *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208 (1988) ("It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress.");

*Attorney General's Manual* 30 n. 3 ("regulations are issued by an agency pursuant to statutory authority").

## CONCLUSION

**Wherefore,** your amicus pray that the panel's opinion be affirmed. It is the height of the H-2B processing season, and the H-2B community needs expeditious resolution and clarity before DHS has another opportunity to "get creative," *Daniels*, 2015 U.S. App. Lexis 15689, at *6, n. 6, and shut down the H-2B program once again or fail to do its statutory duty.

Respectfully submitted:

/s/ R. Wayne Pierce
R. Wayne Pierce
THE PIERCE LAW FIRM, LLC
133 Defense Highway, Suite 106
Annapolis, MD 21401
Phone: (410) 573-9955
Fax: (410) 573-9956
Email: wpierce@adventurelaw.com
(motion to admit to be filed)

**Attorneys for Amicus Outdoor Amusement Business Association, Inc.,**

## CERTIFICATIONS

- 14 -

This brief complies with the type-volume limitation of Fed. R. App. Proc. 32 (a) (7) (B) and 10th Cir. R. 29.1 because the word-count feature in Word 97-2003 indicates that this brief contains <u>2891</u> words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32 (a) (7) (B) (iii).

This brief complies with the typeface requirements of Fed. R. App. Proc. 32 (a) (5) and the type style requirements of  Fed.  R. App. Proc. 32 (a) (6) because this brief was prepared in a proportionally-spaced typeface using Word 97-2003 in Calisto MT 14 points.

On November 2, 2015, the Brief of Amicus and Appendix were served electronically by the Court's CM/ECF system on all counsel of record, each of whom is a filing user.  Hard copies of those documents will be mailed to the clerk, as well as counsel of record Chris Pooley and Erez Reuveni.

<u>/s/ R. Wayne Pierce</u>
R Wayne Pierce

## Amicus Appendix

Case 2:11-cv-07687-LP   Document 115-2   Filed 04/13/12   Page 1 of 7

**U.S. Department of Labor**          Employment Standards Administration
                                      Wage and Hour Division
                                      Washington, D.C. 20210



DHS-DOL
INTERAGENCY AGREEMENT

TERMS AND CONDITIONS

### 1.0 GENERAL DESCRIPTION OF AGREEMENT

These Terms and Conditions constitute an Interagency Agreement (IAA) between the
U.S. Department of Homeland Security (DHS) and the U.S. Department of Labor (DOL).
Pursuant to section 214(c)(14)(B) of the Immigration and Nationality Act (INA), 8
U.S.C. § 1184(c)(14)(B), DOL has been delegated the enforcement authority located at
section 214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i), and has accepted such
delegation. A copy of that delegation is attached as Appendix A to this Agreement.
Pursuant to this delegation of authority, DOL will implement an enforcement program
with respect to section 214(c)(14)(A)(i). U.S. Citizenship and Immigration Services of
DHS (USCIS) will provide to DOL funds totaling $6 million to initiate implementation
and operation of this delegated enforcement program.

### 2.0 PARTIES

The parties to this IAA are DHS, including but not limited to USCIS and U.S.
Immigration and Customs Enforcement (ICE), and DOL, including but not limited to the
Wage and Hour Division.

### 3.0 PURPOSE

The parties enter into this IAA in order that DOL has resources for its assumption of
responsibility to investigate, enforce, and adjudicate violations subject to section
214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i).

### 4.0 AUTHORITY

4.1 The legal authorities to delegate the enforcement authority are section 214(c)(14)(B)
of the INA, 8 U.S.C. § 1184(c)(14)(B), which authorizes the delegation of any authority
under section 214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i) to DOL with the
consent of the Secretary of Labor, and section 103(a)(6) of the INA, 8 U.S.C. §
1103(a)(6), which authorizes the Secretary of Homeland Security to confer or impose
upon employees of DOL, with the consent of the Secretary of Labor, any of the powers,
privileges or duties conferred or imposed on DHS by the INA.

4.2 The legal source of the funding is the DHS share of the Fraud Prevention and
Detection Account, section 286(v)(2)(B) of the INA, 8 U.S.C. § 1356(v)(2)(B).

4.3 The legal authority to transfer the funds is Title 31, United States Code section 1531.

1

## 5.0 RESPONSIBILITIES

DHS responsibilities include the following:

5.1 USCIS will immediately initiate and expeditiously process to completion by August 10, 2009, or by the date that is seven business days after the effective date of this agreement, whichever is later, the transfer to DOL of a total of $6 million.

5.2 USCIS and ICE will report to DOL cases raising suspicion of a substantial failure to meet any of the conditions of an H-2B petition to admit or otherwise provide status to a nonimmigrant described in section 101(a)(15)(H)(ii)(b) of the INA, 8 U.S.C. § 1101(a)(15)(H)(ii)(b).

5.3 DHS will consult with DOL before requesting statutory changes related to the H-2B enforcement authority.

5.4 DHS will make available DHS employees with appropriate knowledge and experience to assist in DOL's implementation and operation of the enforcement authority pursuant to section 214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i). DHS will give DOL information identifying all employers with H-2B petitions approved by DHS after January 18, 2009 by providing a monthly spreadsheet report of approved H-2B petitions.

DOL responsibilities include the following:

5.5 DOL will use the funds transferred pursuant to this IAA for the implementation and operation of the enforcement authority pursuant to section 214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i), including general operations expenses arising from such authority, and will not use the funds for other purposes.

5.6 DOL will communicate any finding that an employer has substantially failed to meet any of the conditions of the petition to admit or otherwise provide status to a nonimmigrant worker under Section 101(a)(15)(H)(ii)(b) of the INA, 8 U.S.C. § 1101(a)(15)(H)(ii)(b), or a willful misrepresentation of a material fact in such petition under 20 CFR 655.80, and any debarment under 20 CFR 655.31 so the Secretary of Homeland Security may take the appropriate action with respect to the petition, including exercising her authorities under Section 214(c)(14)(A)(ii) of the INA, 8 U.S.C. § 1184(c)(14)(A)(ii), and other provisions of the immigration laws.

5.7 DOL will consult with DHS before requesting statutory changes related to the H-2B enforcement authority.

5.8 DOL will issue regulations as needed for the implementation and operation of the enforcement authority pursuant to section 214(c)(14)(A)(i) of the INA, 8 U.S.C. § 1184(c)(14)(A)(i).

2

## 6.0 POINTS OF CONTACT

6.1 DHS Point of Contact will be L. Francis Cissna, Acting Director, Immigration and Border Security Policy, Office of Policy, or his successor.

6.2 DOL Point of Contact will be John L. McKeon, Deputy Administrator for Enforcement, Wage and Hour Division, or his successor.

## 7.0 EFFECTIVE DATE AND MODIFICATION

This agreement will become effective upon signing by the parties. The IAA may be amended or modified, in writing by the mutual agreement of the parties.

## 8.0 CANCELLATION/TERMINATION

Either party upon 360 days written notice to the other party may terminate this agreement.

## 9.0 REPROGRAMMING

Each party will be responsible for providing appropriate reprogramming notification relating to transfer(s) of funds pursuant to this IAA to relevant committees of Congress responsible for oversight or appropriations relating to that party, as determined by the party.

## 10.0 OTHER PROVISIONS

Nothing in this IAA is intended to conflict with current law or regulation. If a term of this IAA is inconsistent with such authority, then that term shall be invalid, but the remaining terms and conditions of this IAA shall remain in full force and effect. Each party shall be solely responsible for defending any claim or action involving any alleged acts or omissions of that party. Nothing in this IAA is intended, or should be construed, to create any right or benefit, substantive or procedural, enforceable at law by any third party against either party or against the United States, its agencies, officer or employees.

## 11.0 FUNDING

Pursuant to Paragraph 4.0 (Authority) and 5.0 (Responsibilities) above, USCIS will transfer $6 million to DOL for the purposes of this agreement. DOL shall provide annual notification to DHS setting forth in detail how the transferred funds have been obligated and expended.

3

AUTHORIZED SIGNATURES:

FOR DHS:

David Heyman
Assistant Secretary for Policy

$\underline{27 - Aug - 2009}$
Date

FOR DOL:

John L. McKeon, Deputy Administrator
for Enforcement, Wage and Hour Division

$\underline{August 14, 2009}$
Date

Sandra E. Foster

**SANDRA E. FOSTER**
**Contracting Officer**
·

17 Aug 2009

**4**

## NOTICES

## DEPARTMENT OF HOMELAND SECURITY

### Delegation of Authority to the Department of Labor under
### Section 214(c)(14)(A) of the Immigration and Nationality Act

January 16, 2009

Pursuant to section 214(c)(14)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. 1184(c)(14)(B), I hereby delegate to the Secretary of Labor certain authorities of the Secretary of Homeland Security, as specified below.

Section 214(c)(14)(A)(i) of the INA, 8 U.S.C. 1184(c)(14)(A)(i) grants the Secretary of Homeland Security the authority to determine, after notice and an opportunity for a hearing, that an employer has substantially failed to meet any of the conditions of the petition to admit or otherwise provide status to a nonimmigrant worker under section 101(a)(15)(H)(ii)(b) of the INA, 8 U.S.C. 1101(a)(15)(H)(ii)(b), or a willful misrepresentation of a material fact in such petition, and to impose, in addition to any other remedy authorized by law, such administrative remedies (including civil monetary penalties not to exceed $10,000 per violation) as the Secretary determines to be appropriate upon a finding.

Section 214(c)(14)(B) of the INA, 8 U.S.C. 1184(c)(14)(B), permits the Secretary of Homeland Security to delegate to the Secretary of Labor, with the Secretary of Labor's agreement, any of the authorities of the Secretary of Homeland Security contained in section 214(c)(14)(A)(i) of the INA, 8 U.S.C. 1184(c)(14)(A)(i), described above.

I have consulted with the Secretary of Labor, who has agreed to accept the authorities of the Secretary of Homeland Security contained in section 214(c)(14)(A)(i) of the INA, 8 U.S.C. 1184(c)(14)(A)(i), described above.

By virtue of the authority vested in me as Secretary of Homeland Security, including the authority vested in me by section 214(c)(14)(B) of the INA, 8 U.S.C. 1184(c)(14)(B), I hereby delegate to the Secretary of Labor all authority of the Secretary of Homeland Security under section 214(c)(14)(A)(i) of the INA, 8 U.S.C. 1184(c)(14)(A)(i). I agree to transfer from the Department of Homeland Security to the Department of Labor the sum of $6 million for the Department of Labor to carry out this delegation of authority. I recognize that after this sum has been expended, subsequent implementation by the Department of Labor of the authorities hereby delegated to the Secretary of Labor is contingent upon the receipt of funds, either from Congressional appropriation or other sources (e.g., fees), sufficient to cover the Department of Labor's costs of such implementation. The Secretary of Labor agrees to communicate any finding that an employer has substantially failed to meet any of the conditions of the petition to admit or otherwise provide status to a nonimmigrant worker under section 101(a)(15)(H)(ii)(b) of the INA, 8 U.S.C. 1101(a)(15)(H)(ii)(b), or a willful misrepresentation of a material fact

in such petition, so the Secretary of Homeland Security may discharge his duties under section 214(c)(14)(A)(ii) of the INA, 8 U.S.C. 1184(c)(14)(A)(ii).

Effective Date: This Order is effective on January 18, 2009, the date the Department of Labor's proposed regulations describing its H-2B enforcement regime, 73 Federal Register 29,942 (May 22, 2008), are final and effective; and subject to the conditions below. Any court order or other action that prevents any major part or provision of the DOL H-2B final regulation published in the Federal Register on December 19, 2008 from taking effect shall delay the effective date of this delegation of authority until such time as the major part or provision becomes effective.

Paul A. Schneider
Deputy Secretary of Homeland Security.

**Determination with Respect to Delegation of Functions Pursuant to Delegation from Homeland Security to Labor**

As of January 16, 2009

Department of Homeland Security transfer to the Department of Labor

Pursuant to section 214(c)(14)(B) of the Immigration and Nationality Act (INA), 8 U.S.C. 1184(c)(14)(B), the Secretary of Homeland Security, with the consent of the Secretary of Labor, delegated to the Secretary of Labor certain authorities of the Secretary of Homeland Security on January 16, 2009.

Pursuant to the January 16, 2009 delegation of authorities and functions, and the authority of 31 U.S.C. 1531, I direct the transfer of $6,000,000 from DHS' 2009 share of the Fraud Prevention and Detection Account, section 286(v)(2)(B) of the INA (8 U.S.C. 1356(v)(2)(B)).


_____                    _____

Peter Orszag                                           Date
Director, Office of Management and Budget